MATTER OF CHANG

In Visa Petition Proceedings

A-20306974

*Decided by Board June 12, 1974*

Since beneficiary's alleged adoption in Burma by natives of China occurred subsequent to 1939, it was governed, not by Chinese customary law, but by Burmese Buddhist law, under which there are two forms of adoption: *Kittima* and *Appatittha*. Beneficiary's adoption, allegedly effected in 1950 without writing and without notifying the Burmese authorities, could not have been a *Kittima* adoption, which is similar to the concept of adoption in the United States. Assuming the adoption was an *Appatittha* adoption, the beneficiary is nevertheless ineligible for preference classification under section 203(a)(2) of the Immigration and Nationality Act, as amended, as an adopted son, since such adoption is insufficient to confer benefits for immigration purposes (*Matter of Kong*, Interim Decision No. 2275).

ON BEHALF OF PETITIONER:    Allen Jackson, Esquire
                            580 Washington Street
                            San Francisco, California 94111

The lawful permanent resident petitioner applied for preference status for the beneficiary as his adopted son under section 203(a)(2) of the Immigration and Nationality Act. In a decision dated August 1, 1973, the District Director approved the visa petition, after concluding that an adoption had taken place under the law of Burma and that such adoption was sufficient for the purposes of the Immigration and Nationality Act. The District Director has certified his decision to us pursuant to 8 CFR 3.1(c). We will reverse the decision of the District Director and deny the visa petition.

The petitioning father claims that he and his wife, both natives of China, adopted the beneficiary in Burma in 1950 according to Chinese customary law. The petitioner and his wife apparently exchanged one of their own daughters for the beneficiary in order that they might have a son to carry on the family line. After the exchange, the beneficiary was raised as a son of the petitioner and his wife. No adoption papers were exchanged, nor were the authorities in Burma notified of the adoption.

The District Director obtained a memorandum of foreign law, dated June 1, 1973, from the Far Eastern Law Division of the Library of Congress. That memorandum sets forth section 13(1) of the Burma Laws Act, Act XIII of 1898, which states:

(1) Where in any suit or other proceeding in Burma it is necessary for the Court to decide any question regarding succession, inheritance, marriage or caste, or any religious usage or institution,

(a) the Buddhist law in cases where the parties are Buddhists,

(b) the Mohammedan law in cases where the parties are Mohammedans, and

(c) the Hindu law in cases where the parties are Hindus

shall form the rule of decision, except in so far as such law has by enactment been altered or abolished, or is opposed to any custom having the force of law.[1]

Accordingly, the governing law in all cases where the parties concerned are Burmese Buddhists is Burmese Buddhist law. Prior to 1939, it was held that Chinese Buddhists in Burma were not governed by the Burmese Buddhist law, but rather by the personal law of the Chinese, that is, Chinese customary law.[2] However, in 1939 it was held that Burmese Buddhist law could not be varied or overridden by exotic customs or usages.[3] Thereafter, Burmese Buddhist law, not Chinese customary law, has governed the rights of Chinese Buddhists domiciled in Burma.

On the basis of the memorandum of Burmese law, the District Director correctly concluded that the present case was not governed by Chinese customary law. He went on, however, to conclude that an *Appatittha* adoption had occurred under Burmese Buddhist law and that this adoption was sufficient for the purposes of the Immigration and Nationality Act. We disagree with this conclusion.

We considered adoption under the Burmese Buddhist law in *Matter of Kong*, Interim Decision 2275 (BIA 1974). We noted that there are two forms of adoption under Burmese Buddhist law: *Kittima* adoption, which is similar to the concept of adoption in the United States, and *Appatittha* adoption, a casual relationship, which does not create substantial rights and obligations between parent and child.

An instrument of adoption registered in accordance with Section 5 of the Registration of Kittima Adoptions Act is a prerequisite for the legal validity of a *Kittima* adoption effected after April 1, 1941. The present adoption was allegedly effected without writing and without notifying the Burmese authorities. We agree with the

---

[1] *The Burma Code*, Rangoon, Ministry of Justice, 1955, v. 1, p. 9.

[2] *Tan Ma Shwe Zin* v. *Tan Ma Ngwe Zin*, 10 Indian L.R. Rangoon Ser. 97 (1932).

[3] *Tan Ma Shwe Zin* v. *Khoo Soo Choung*, Rangoon L.R. 548 (1939).

District Director's conclusion that there could be no *Kittima* adoption in the present case.

We held in *Matter of Kong*, supra, that an *Appatittha* adoption is not an adoption for the purposes of the Immigration and Nationality Act. Therefore, even if we assume that the information submitted by the petitioner is sufficient to establish an *Appatittha* adoption, the beneficiary is not entitled to preference status under section 203(a)(2) of the Act on the basis of such an adoption.

The District Director cited *Matter of Poon*, Interim Decision No. 2153 (BIA 1972), and *Matter of Rodriguez*, Interim Decision No. 2195 (BIA 1973), as authority for his conclusion that an *Appatittha* adoption is sufficient for immigration purposes. Those cases dealt with adoption under Chinese law and custom in Hong Kong and are inapplicable to the present situation. The District Director's conclusion is inconsistent with our holding in *Matter of Kong*, *supra*, and therefore it must be reversed.

In visa petition proceedings, the petitioner has the burden of establishing eligibility for the benefit conferred by the immigration laws. *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966). The petitioner has not established that the beneficiary is his adopted son for immigration purposes. Consequently, the visa petition must be denied.

**ORDER:** The decision of the District Director is reversed.

*Further order:* The visa petition is denied.